FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 14, 2020

SEAN F. McAVOY, CLERK

1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   EMILIO U.,

8          Plaintiff,                          No: 1:19-CV-03234-FVS

      v.
9                                              ORDER GRANTING PLAINTIFF'S
                                               MOTION FOR SUMMARY
10  ANDREW M. SAUL, Commissioner               JUDGMENT
    of the Social Security Administration,

11         Defendant.

12

13         BEFORE THE COURT are the parties' cross-motions for summary judgment.

14  ECF Nos. 10, 14.  This matter was submitted for consideration without oral

15  argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

16  represented by Special Assistant United States Attorney Sarah L. Martin.  The

17  Court, having reviewed the administrative record and the parties' briefing, is fully

18  informed.  For the reasons discussed below, the Court **GRANTS, in part,** Plaintiff's

19  Motion for Summary Judgment, ECF No. 11, **DENIES** Defendant's Motion for

20  Summary Judgment, ECF No. 14, and **REMANDS** the case for additional

21  proceedings consistent with this Order.

ORDER ~ 1

**JURISDICTION**

Plaintiff Emilio U.[1] filed an application for Supplemental Security Income (SSI) on November 15, 2012, Tr. 85, alleging disability since March 3, 2011, Tr. 193.  Benefits were denied initially, Tr. 119-27, and upon reconsideration, Tr. 131-35.  A hearing before Administrative Law Judge Kimberly Boyce ("ALJ") was conducted on November 12, 2014.  Tr. 44-84.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ also took the testimony of vocational expert Kimberly Mullinax.  *Id*.  The ALJ denied benefits on November 28, 2014.  Tr. 20-34.  The Appeals Council denied Plaintiff's request for review on September 5, 2019.  Tr. 1-6.  Plaintiff requested review of the ALJ's decision by this Court on May 8, 2017.  Tr. 942-44.  This Court reversed the ALJ's decision and remanded the case for additional proceedings.  Tr. 950-62.

While the case was pending before this Court, Plaintiff filed a new application for SSI on June 7, 2016, Tr. 968, alleging an onset date of June 1, 2016, Tr. 1100.  This application was denied initially, Tr. 1012-20, and upon reconsideration, Tr. 1022-28.  On April 20, 2019, Plaintiff filed an application for Child Disability Insurance Benefits (CDIB), Tr. 1253, alleging an onset date of September 31, 2009,

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

Tr. 1115. The second SSI application and the CDIB application were consolidated

with the remanded SSI application. Tr. 966, 1253. The ALJ held a hearing on June

18, 2019, and took testimony form Plaintiff and vocational expert Joseph Moisan.

Tr. 890-906. The ALJ entered a partially favorable decision on July 30, 2019

finding that Plaintiff met the definition of disability as of the day the second SSI

application was filed, June 7, 2016. Tr. 852-68. The Appeals Council did not

assume jurisdiction over the decision within the prescribed period under 20 C.F.R. §

416.1484 making the ALJ's July 30, 2019 decision the final decision of the

Commissioner. Plaintiff failed a Complaint in this Court on October 2, 2019. ECF

No. 1. The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g),

1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts,

the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most

pertinent facts are summarized here.

In the initial application, Plaintiff alleged that he suffered from back pain,

depression, anxiety, panic attacks, nightmares, insomnia, and allergies that limited

his ability to work. Tr. 208. He turned 18 on the alleged onset date of the first SSI

application, March 3, 2011. Tr. 193. The highest grade Plaintiff completed was the

tenth grade, and he participated in special education classes. Tr. 209. At the time of

his initial application, Plaintiff stated that he had never worked. Tr. 208.

ORDER ~ 3

1

## STANDARD OF REVIEW

2      A district court's review of a final decision of the Commissioner of Social

3  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4  limited; the Commissioner's decision will be disturbed "only if it is not supported by

5  substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158

6  (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable

7  mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and

8  citation omitted).  Stated differently, substantial evidence equates to "more than a

9  mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).

10  In determining whether the standard has been satisfied, a reviewing court must

11  consider the entire record as a whole rather than searching for supporting evidence in

12  isolation. *Id*.

13      In reviewing a denial of benefits, a district court may not substitute its

14  judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion

15  when the evidence is susceptible to more than one rational interpretation."

16  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court

17  will not reverse an ALJ's decision on account of an error that is harmless. *Id*.  An

18  error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability

19  determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's

20  decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

21  *Sanders*, 556 U.S. 396, 409-10 (2009).

ORDER ~ 4

1

## FIVE-STEP EVALUATION PROCESS

2      A claimant must satisfy two conditions to be considered "disabled" within the

3  meaning of the Social Security Act.  First, the claimant must be "unable to engage in

4  any substantial gainful activity by reason of any medically determinable physical or

5  mental impairment which can be expected to result in death or which has lasted or

6  can be expected to last for a continuous period of not less than twelve months."  42

7  U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity

8  that he is not only unable to do his previous work[,] but cannot, considering his age,

9  education, and work experience, engage in any other kind of substantial gainful

10  work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

11      The Commissioner has established a five-step sequential analysis to

12  determine whether a claimant satisfies the above criteria.  See 20 C.F.R. §§

13  404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

14  considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

15  416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

16  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

17  404.1520(b), 416.920(b).

18      If the claimant is not engaged in substantial gainful activity, the analysis

19  proceeds to step two.  At this step, the Commissioner considers the severity of the

20  claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

21  claimant suffers from "any impairment or combination of impairments which

ORDER ~ 5

significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the

claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful

activity since December 31, 2009, the onset date associated with the CDIB claim.

Tr. 854.  At step two, the ALJ found that Plaintiff has the following severe

impairments: degenerative disc disease; scoliosis; bilateral hip sciatica; asthma;

gastroesophageal reflux disease (GERD); obesity; affective disorder; intellectual

disorder; anxiety disorder; posttraumatic stress disorder (PTSD).  Tr. 854.  At step

three, the ALJ found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of a listed impairment.  Tr.

855.  The ALJ then found that prior to June 7, 2016, Plaintiff had the RFC to

perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) except he

had the following limitations:

> he could stand and walk for about six hours and can sit for more than
> six hours with normal breaks.  He can lift, carry, push, and pull within
> light exertional limits.  He could occasionally climb, balance, stoop,
> kneel, crouch, and crawl.   He could perform work in which
> concentrated exposure to extreme cold, vibration, fumes, odors, dusts,
> gasses, poor ventilation, and/or hazards is not present.  In order to meet
> ordinary and reasonable employer expectations regarding attendance,
> production, and workplace behavior, he could understand, remember,
> and carry out unskilled, routine, and repetitive work, and could cope
> with occasional work setting change and occasional interaction with
> supervisors.  He could work in proximity to coworkers, but not in a
> team or cooperative effort.  He could perform work that did not require
> interaction with the general public as an essential element of the job,
> but occasional incidental contact with the general public was not
> precluded.

Tr. 856-57.

The ALJ then found that beginning June 7, 2016, Plaintiff has the RFC to

perform sedentary work as defined in 20 C.F.R. §§ 404.5167(a), 416.967(a) with the

ORDER ~ 8

following limitations:

> the claimant can never climb ladders, ropes, or scaffolds, work at unprotected heights or in proximity to hazards such as heavy machinery with dangerous moving parts. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can perform work in which concentrated exposure to extreme cold, heat, wetness, pulmonary irritants, or vibration is not present. The claimant can understand, remember, and carry out simple, routine tasks and follow short, simple instructions. He can perform work that requires little or no judgment and can perform simple duties that can be learned on the job in a short period. He can cope with occasional work setting change and occasional, routine interaction with supervisors. The claimant can work in proximity to coworkers, but not in a team or cooperative effort. He can perform work that does not require interaction with the general public as an essential element of the job, but occasional incidental contact with the teneral public is not precluded.

Tr. 864-65.

At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 866. At step five, the ALJ found that prior to June 7, 2016, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, including production assembler, housekeeping cleaner, and packing line worker. Tr. 867. Based on this finding, the ALJ found that Plaintiff was not disabled, as defined in the Social Security Act, prior to June 7, 2016. Tr. 866-67. The ALJ found that beginning June 7, 2016, considering Plaintiff's age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 867. The ALJ concluded that Plaintiff was therefore under a disability, as defined in the Social Security Act, beginning June 7, 2016 through the date of the decision. Tr. 867.

ORDER ~ 9

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him SSI under Title XVI of the Social Security Act prior to June 7, 2016 and CDIB under Title II of the Social Security Act.  ECF No. 10.   Plaintiff raises the following issues for this Court's review:

1.    Whether the ALJ erred in finding June 7, 2016 as the established onset date;

2.    Whether the ALJ properly considered the medical opinions in the record; and

3.    Whether the ALJ properly considered Plaintiff's symptom claims.

**DISCUSSION**

**1.    Established Onset Date (EOD)**

Plaintiff argues that the ALJ erred by setting an arbitrary established onset date.  ECF No. 10 at 6-10.

Plaintiff alleged three separate onset dates.  The first SSI application alleged an onset date of Plaintiff's eighteenth birthday, March 3, 2011.  Tr. 193.  The second SSI application alleged an onset date of June 1, 2016.  Tr. 1100.  The CDIB application alleged an onset date of December 31, 2009.  Tr. 1115.  The ALJ settled on June 7, 2016, which was the date Plaintiff filed his second SSI application, stating that "I find that beginning on June 7, 2016, the claimant's allegations regarding his symptoms and limitations are consistent with the evidence."  Tr. 865.

The EOD must be "must be supported by the medical and other evidence and be consistent with the nature of the impairment(s)."  S.S.R. 18-1p.  The S.S.R. sets

ORDER ~ 10

1  forth what is considered when determining the EOD:

> We consider whether we can find that the claimant first met the
> statutory definition of disability at the earliest date within the period
> under consideration, taking into account the date the claimant alleged
> that his or her disability began. We review the relevant evidence and
> consider, for example, the nature of the claimant's impairment; the
> severity of the signs, symptoms, and laboratory findings; the
> longitudinal history and treatment course (or lack thereof); the length
> of the impairment's exacerbations and remissions, if applicable; and
> any statement by the claimant about new or worsening signs,
> symptoms, and laboratory findings.

7  *Id*.

8    Here, the ALJ erred.  The June 7, 2016 EOD does not align with any specific

9  objective evidence to support the change in the RFC.  Instead, it appears that the

10  ALJ simply made a procedural choice based on Plaintiff's second SSI application.

11  At the time Plaintiff filed his second SSI claim, there was a prior final determination

12  from the Commissioner that, while it was pending before this Court, precluded

13  Plaintiff from alleging a period prior the ALJ's unfavorable decision.  *See Miller v.*

14  *Heckler*, 770 F.2d 845, 848 (9th Cir. 1985) (res judicata applies to final

15  determinations by the Commissioner).  In most SSI applications, the protective filing

16  date is the earliest EOD.  *See* 20 C.F.R. § 416.202 (filing an application for benefits

17  is one of seven requirements for being eligible for benefits); POMS DI 25501.370.

18  However, since the two SSI applications and the CDIB application were

19  consolidated, the ALJ was not limited to the protective filing date of the second SSI

20  application as the EOD.

21    The ALJ stated that starting June 7, 2016, "the claimant had unstable mental

ORDER ~ 11

1   functioning," and cited the following evidence:

2       in a therapy session on June 22, 2016, the claimant described anxiety
        attacks, feeling shaky, hot and cold, seats, nauseated, and distorted
3       thinking symptoms that had last for the last two weeks (64F37).
        Despite compliance with regular therapy and medication, he still
4       experienced high anxiety symptoms (*see e.g.* 72F2, 22, 25).  He also
        expressed overwhelm and stress about medical appointments (72F2).
5       He lacked eye contact throughout sessions, and he exhibited anxiety
        symptoms (64F45; 72F15, 20; 77F10).  His judgment and insight were
6       observed to be fair to poor (64F47; 66F5; 77F15, 28).  He also endorsed
        paranoid feelings when going outside and reported feeling the need to
7       take a gun to protect himself (66F15). He reported that he had not been
        interacting with others due to high anxiety (72F2).

8

9   Tr. 865.  However, the record shows that Plaintiff experienced these symptoms prior

10  to June 7, 2016.  On November 16, 2012, Mary Pine, PAC observed that Plaintiff

11  had no eye contact and had a flat affect.  Tr. 428.  Plaintiff stated that he was getting

12  very anxious and refused to discuss his personal issues at that time.  *Id*.  On April 11,

13  2013, Plaintiff reported that his anxiety caused him to lose his appetite, causing

14  difficulty sleeping.  Tr. 549.  On June 14, 2013, Plaintiff described an increase in

15  anxiety as "every day his heart starts racing and he gets shortness of breath and he is

16  not able to leave home."  Tr. 565.  On September 25, 2013, Plaintiff reported that he

17  had "been feeling sick, having anxiety attacks and sad" for the last three weeks, and

18  it was observed that Plaintiff was anxious and his palms were sweaty.  Tr. 530.  On

19  June 11, 2014, Plaintiff reported significant anxiety affecting his sleep and an

20  inability to leave his home without his mother.  Tr. 782.  On August 24, 2014,

21  Plaintiff reported anxiety causing him to feel nauseous.  Tr. 791.  In December of

ORDER ~ 12

1   2014, Plaintiff reported that he was still not leaving the house except for his

2   appointments.  Tr. 1263.  On February 17, 2015, Plaintiff had a depressed affect and

3   no eye contact at times.  Tr. 1385.  In August of 2015, Plaintiff reported three or four

4   anxiety attacks a day.  Tr. 1300.  On May 13, 2016, "Emilio has a poor eye contact.

5   He continue to gaze down when talking.  He reported that he had a difficult time

6   getting out of the house today."  Tr. 1376.  This demonstrates that the symptoms the

7   ALJ cited were not only manifest after June 7, 2016, but existed in the record well

8   prior to the second application for SSI benefits.

9         The ALJ made a similar finding in regards to Plaintiff's physical impairments

10   and the June 7, 2016 EOD: "Regarding the claimant's physical symptoms, treatment

11   records reflect his back pain had worsened and he was experiencing left side sciatica

12   (35F4; 75F24).  Contributing to his physical symptoms, the claimant has maintained

13   an elevated body mass index and he continues to experience problems with GERD

14   (*see e.g.* 75F24)."  Tr. 865.  However, the left sided sciatica, obesity, and GERD

15   were present prior to the June 7, 2016 EOD.  *See* Tr. 838, 1385 (showing bilateral

16   sciatica was present as early as February and April of 2015); Tr. 316 (in July of

17   2011, Plaintiff weighed 262 pounds and had a BMI of 32.92); Tr. 318 (in July of

18   2011, an EGD confirmed gastritis); Tr. 1385 (Plaintiff's BMI had reached 42 by

19   February of 2015).  Therefore, the ALJ's EOD of June 7, 2016 is not supported by

20   substantial evidence, and is merely a decision made to align with Plaintiff's second

21   application for SSI.

1    "At the hearing level of our administrative review process, if the ALJ needs to

2    infer the date that the claimant first met the statutory definition of disability, he or

3    she may call on the services of an ME [medical expert] by soliciting testimony or

4    requesting responses to written interrogatories."  S.S.R. 18-1p.  Therefore, this case

5    is remanded for the ALJ to solicit the testimony of a physiological expert and a

6    medical expert regarding the appropriate date in which Plaintiff meet the statutory

7    definition of disability prior to June 7, 2016.

8    **2.    Medical Source Opinions**

9    Plaintiff challenges the weight the ALJ assigned to the medical opinions of

10    Roland Dougherty, Ph.D., Jorge Torres-Saenz, Psy.D., George Petzinger, M.D,

11    Gricelda Chacon, MSW, Mary Pine, PAC, Irma Clark, PA, and Irma Mejia, ARNP.

12    ECF No. 10 at 10-18.

13    If a treating or examining physician's opinion is uncontradicted, the ALJ may

14    reject it only by offering "clear and convincing reasons that are supported by

15    substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

16    Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another

17    doctor's opinion, an ALJ may only reject it by providing specific and legitimate

18    reasons that are supported by substantial evidence."  *Id.* (citing *Lester v. Chater*, 81

19    F.3d 821, 830-31 (9th Cir. 1995)).  Social Security Ruling (S.S.R.) 96-8p states that

20    the RFC assessment "must always consider and address medical source opinions.  If

21    the RFC assessment conflicts with an opinion from a medical source, the adjudicator

must explain why the opinion was not adopted."

**A.    Roland Dougherty, Ph.D.**

On February 27, 2013, Dr. Dougherty completed a psychological consultative evaluation of Plaintiff.  Tr. 401-19.  He diagnosed Plaintiff with a cognitive disorder, generalized anxiety disorder with panic attacks, PTSD, dysthymia, rule out major depressive disorder, rule out conversion disorder, and rule out malingering/symptom exaggeration/poor effort.  Tr. 408.  Dr. Dougherty provided a medical source statement that Plaintiff was capable of performing at least simple and repetitive tasks with some detailed and more complex tasks, he was able to accept instructions from supervisors, and he would have difficulty with attendance, persistence, and stress:

> I think he would have significant difficulty maintaining regular attendance in the workplace and completing a normal workday/workweek without interruptions from his psychiatric condition.  For the same reasons he would have difficulty dealing with the stress encountered in the workplace.

Tr. 409.  The ALJ gave the opinion some weight, stating that Dr. Dougherty's opinion that Plaintiff was capable of simple and repetitive tasks was supported and found that the record supported greater social functioning limitations than opined by Dr. Dougherty.  Tr. 862-63. However, the ALJ never discussed the limitations to maintaining regular attendance and dealing with workplace stress. *Id*.  And, the ALJ failed to account for these opined limitations in the RFC determination.  Tr. 856-57.

The RFC assessment "must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source,

1  the adjudicator must explain why the opinion was not adopted."  S.S.R. 96-8p.

2  Therefore, the ALJ erred by failing to state why she failed to adopt these portions of

3  Dr. Dougherty's opinion.  The case is remanded for the ALJ to properly address Dr.

4  Dougherty's opinion.

5      **B. Remaining Psychological Opinions**

6      Plaintiff also challenges the opinions of Dr. Torres-Saenz, Dr. Pizinger, and

7  Ms. Chacon.  ECF No. 10 at 11-17.  All three of these providers opined that Plaintiff

8  would miss work and appointments due to mental health symptoms similar to Dr.

9  Dougherty' opinion.  Tr. 521, 724, 1309-10.  Since the case is being remanded for

10 the ALJ to address Dr. Dougherty's opinion addressing Plaintiff's ability to sustain

11 work activity and attendance, the ALJ will also readdress the full opinions of Dr.

12 Torres-Saenz, Dr. Pizinger, and Ms. Chacon upon remand.

13     **C.    Mary Pine, PAC, Irma Clark, PA, and Irma Mejia, ARNP**

14     All three of these opinions limited Plaintiff to sedentary work or less and

15 stated that he could not sustain work activity.  Tr. 421-22, 453-54, 1313-14.

16     As physician assistants and a nurse practitioner, these providers do not qualify

17 as acceptable medical sources.  20 C.F.R. §§ 404.1502, 416.902.  Instead, they

18 qualifies as other sources.  *Id*.  However, testimony from other sources are

19 "competent evidence" as to "how an impairment affects [a claimant's] ability to

20 work."  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006); *see also*

21 *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  An ALJ must give

ORDER ~ 16

"germane" reasons to discount evidence from these "other sources." *Dodrill*, 12 F.3d at 919.

The ALJ rejected the opinion for three reasons: (1) the treating providers are not acceptable medical sources; (2) the opinions are inconsistent with the medical evidence; and (3) the opinions are inconsistent with Plaintiff's self-report. Tr. 861-62. The case has been remanded for the ALJ to call a psychological and a medical expert to address the medical evidence as a whole and assess an accurate EOD. These opinions are from the period the ALJ is to readdress in assessing an accurate EOD. Therefore, the ALJ will address these opinions upon remand.

### 3.    Plaintiff's Symptom Statements

Plaintiff challenges the ALJ's treatment of his symptom statements. ECF No. 10 at 18-21.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully supported prior to June 7, 2016,

ORDER ~ 17

1   for the reasons explained in this decision." Tr. 858.  The evaluation of a claimant's

2   symptom statements and their resulting limitations relies, in part, on the assessment

3   of the medical evidence.  See 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 16-3p.

4   Therefore, in light of the case being remanded for the ALJ to readdress the medical

5   source opinions in the file, a new assessment of Plaintiff's subjective symptom

6   statements prior to June 7, 2016 will be necessary.

7                                      **CONCLUSION**

8           The decision whether to remand for further proceedings or reverse and

9   award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

10  888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate

11  where "no useful purpose would be served by further administrative proceedings, or

12  where the record has been thoroughly developed," *Varney v. Sec'y of Health &*

13  *Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by

14  remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273, 1280

15  (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014)

16  (noting that a district court may abuse its discretion not to remand for benefits when

17  all of these conditions are met).  This policy is based on the "need to expedite

18  disability claims." *Varney*, 859 F.2d at 1401.  But where there are outstanding

19  issues that must be resolved before a determination can be made, and it is not clear

20  from the record that the ALJ would be required to find a claimant disabled if all the

21  evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*,

ORDER ~ 18

379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, testimony from a medical and a psychological expert is required to determine the appropriate onset date. Therefore, the Court remands this case for further proceedings consistent with this Order.

On remand, the ALJ shall call a medical expert and a psychological expert to determine the appropriate onset date of disability. In doing so, the ALJ will readdress the medical opinions in the record and readdress Plaintiff's symptom statement. In addition, the ALJ should call a vocational expert to address any step four or five determinations at remand proceedings.

The ALJ's determination on remand is limited to the period prior to June 7, 2016. Nothing in this order instructs the ALJ to assess Plaintiff's eligibility after June 7, 2016. Therefore, Plaintiff's eligibility for benefits starting June 7, 2016 and forward shall remand undisturbed. This remand is to determine if Plaintiff's disability onset date can be established prior to June 7, 2016.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is **GRANTED, in part,** and the matter is remanded for further proceedings consistent with

this Order.

2.  Defendant's Motion for Summary Judgment, ECF No. 14 is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Plaintiff, and **CLOSE** the file.

**DATED** October 14, 2020.


                              _s/Fred Van Sickle_
                              Fred Van Sickle
                              Senior United States District Judge

ORDER ~ 20